FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Feb 11, 2019

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| JESSICA J., <br><br> Plaintiff, <br><br> v. <br><br> COMMISSIONER OF SOCIAL SECURITY, <br><br> Defendant. | No. 4:18-CV-05048-JTR <br><br> ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT |

**BEFORE THE COURT** are cross-motions for summary judgment. ECF Nos. 17, 21. Attorney D. James Tree represents Jessica J. (Plaintiff); Special Assistant United States Attorney Benjamin J. Groebner represents the Commissioner of Social Security (Defendant). The parties have consented to proceed before a magistrate judge. ECF No. 7. After reviewing the administrative record and briefs filed by the parties, the Court **GRANTS, in part,** Plaintiff's motion for summary judgment and **DENIES** Defendant's motion for summary judgment.

**JURISDICTION**

Plaintiff filed an application for Supplemental Security Income (SSI) on

ORDER GRANTING PLAINTIFF'S MOTION - 1

June 22, 2011, Tr. 75, 223, alleging disability since June 1, 2007, Tr. 216, due to depression, anxiety, post-traumatic stress disorder (PTSD), fibromyalgia, lupus, herniated disk in her neck, and a sphincter of Oddi dysfunction, Tr. 283.  The application was denied initially and upon reconsideration.  Tr. 106-13, 117-23.  Administrative Law Judge (ALJ)  Virginia M. Robinson held a hearing on January 15, 2013 and heard testimony from Plaintiff and vocational expert Trevor Duncan.  Tr. 34-71.  At the hearing, Plaintiff requested that the ALJ consider a closed period of disability from July 2008 through or up to August 2012 because Plaintiff had been hired as a cook at a treatment center in August of 2012 and was working.  Tr. 38-39.  The ALJ issued an unfavorable decision on March 22, 2013 finding Plaintiff had not been under a disability, as defined in the Social Security Act, since the application was filed on June 22, 2011.  Tr. 14-28.  The Appeals Council denied review on April 28, 2014.  Tr. 1-3.  The ALJ's March 22, 2013 decision became the final decision of the Commissioner, which was appealed to this Court on June 30, 2014.  Tr. 948-50.  On April 8, 2015, this Court remanded the case for additional proceedings.  Tr. 960-84.

While the 2011 application was pending before this Court, Plaintiff filed a subsequent application for SSI benefits on August 4, 2014, Tr. 990, alleging disability beginning on June 6, 2013, Tr. 1153.  This subsequent application was denied initially and at reconsideration.  Tr. 1048-51, 1053-62.

On August 11, 2015, the Appeals Council remanded the 2011 application to the ALJ for additional proceedings and consolidated the 2011 application and the subsequent application into a single record.  Tr. 988.  The ALJ held a hearing on the consolidated claims on January 20, 2017 and heard testimony from Plaintiff and vocational expert Kimberly Mullinax.  Tr. 876-918.  On January 11, 2018, the ALJ issued an unfavorable decision.  Tr. 796-812.  The Appeals Council did not assume jurisdiction within the prescribed period so the ALJ's January 11, 2018 decision became the final decision of the Commissioner and is appealable to the

district court pursuant to 42 U.S.C. §§ 405(g), 1383(c). 20 C.F.R. § 416.1484(c). Plaintiff initiated this action on March 26, 2018. ECF Nos. 1, 4.

## STATEMENT OF FACTS

The facts of the case are set forth in the administrative hearing transcript, the ALJ's decision, and the briefs of the parties. They are only briefly summarized here.

Plaintiff was 41 years old at the date of filing. Tr. 215. She reported that the last grade she completed was the eighth and that she had attended special education classes. Tr. 284. Her reported work history includes the jobs of commercial truck driver and deli and seafood clerk. *Id*. When applying for benefits Plaintiff reported that she stopped working on July 16, 2008 because she was fired, but that her condition was severe enough to keep her from working as of June 1, 2007. Tr. 283.

## STANDARD OF REVIEW

The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). The Court reviews the ALJ's determinations of law de novo, deferring to a reasonable interpretation of the statutes. *McNatt v. Apfel*, 201 F.3d 1084, 1087 (9th Cir. 2000). The decision of the ALJ may be reversed only if it is not supported by substantial evidence or if it is based on legal error. *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is defined as being more than a mere scintilla, but less than a preponderance. *Id*. at 1098. Put another way, substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the ALJ. *Tackett*, 180 F.3d at 1097. If substantial evidence supports the administrative findings, or if conflicting evidence supports a finding of either disability or non-

disability, the ALJ's determination is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-30 (9th Cir. 1987). Nevertheless, a decision supported by substantial evidence will be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1988).

## SEQUENTIAL EVALUATION PROCESS

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. § 416.920(a); *see Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987). In steps one through four, the burden of proof rests upon the claimant to establish a prima facie case of entitlement to disability benefits. *Tackett*, 180 F.3d at 1098-99. This burden is met once the claimant establishes that physical or mental impairments prevent her from engaging in her previous occupations. 20 C.F.R. § 416.920(a)(4). If the claimant cannot do her past relevant work, the ALJ proceeds to step five, and the burden shifts to the Commissioner to show that (1) the claimant can make an adjustment to other work, and (2) specific jobs which the claimant can perform exist in the national economy. *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193-94 (9th Cir. 2004). If the claimant cannot make an adjustment to other work in the national economy, a finding of "disabled" is made. 20 C.F.R. § 416.920(a)(4)(v).

## ADMINISTRATIVE DECISION

On January 11, 2018, the ALJ issued a decision finding Plaintiff was not disabled as defined in the Social Security Act from June 22, 2011 through the date of the decision.

At step one, the ALJ found Plaintiff had engaged in substantial gainful activity (SGA) from August 3, 2012 to June 19, 2013. Tr. 799. However, since there was a continuous 12-month period during which Plaintiff did not engage in SGA, the ALJ continued the sequential evaluation process. *Id*.

At step two, the ALJ determined that Plaintiff had the following severe

impairments: degenerative disc disease; degenerative joint disease of the left knee; fibromyalgia; asthma; disorder of the muscle, ligament, and fascia; affective disorders; anxiety disorders; personality disorders; and eating disorders. Tr. 733.

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. Tr. 800.

At step four, the ALJ assessed Plaintiff's residual function capacity and determined she could perform a range of light work with the following limitations:

> lift and or carry up to 20 pounds occasionally and up to 10 pounds frequently; she can stand and or walk for approximately 6 hours and sit for approximately 6 hours per 8-hour workday with normal breaks; she can frequently climb ramps and stairs; she can occasionally climb ladders, ropes, and scaffolds; she can frequently stoop, kneel, crouch, or crawl; she is limited to frequent fingering; she must avoid concentrated exposure to excessive vibration, exposure to pulmonary irritants such as fumes and gases and work place hazards such as unprotected heights; she is limited to simple routine tasks, in a routine work environment with simple work related decisions; she is limited to superficial interaction with coworkers and incidental interaction with the public, no interaction with the public as part of required duties.

Tr. 801-02. The ALJ identified Plaintiff's past relevant work as tractor-trailer truck driver, cafeteria cook, and kitchen helper and concluded that Plaintiff was not able to perform this past relevant work. Tr. 810-11.

At step five, the ALJ determined that, considering Plaintiff's age, education, work experience and residual functional capacity, and based on the testimony of the vocational expert, there were other jobs that exist in significant numbers in the national economy Plaintiff could perform, including the jobs of production assembler, housekeeping cleaner, and packing line worker. Tr. 811-12. The ALJ concluded Plaintiff was not under a disability within the meaning of the Social Security Act at any time from June 22, 2011 through the date of the decision. Tr.

812.

## ISSUES

The question presented is whether substantial evidence supports the ALJ's decision denying benefits and, if so, whether that decision is based on proper legal standards. Plaintiff contends the ALJ erred by (1) finding Plaintiff had engaged in SGA at step one, (2) failing to address Plaintiff's right knee impairment at step two, (3) failing to properly weigh the medical opinions, (4) failing to properly consider lay witness testimony, and (5) failing to properly address Plaintiff's symptom statements.

## DISCUSSION[1]

**1.  Step One**

Plaintiff argues that the work she performed from August of 2012 to June of 2013 should not qualify as SGA because she was receiving accommodations that equated to a sheltered or special work environment.  ECF No. 17 at 5-7.  In the alternative, Plaintiff argues that nine months of the work qualifies as a trial work period and the period she worked beyond nine months was still within her extended period of eligibility. ECF No. 17 at 8.

At step one, the ALJ determines if a claimant is working and whether that work amounts to SGA.  20 C.F.R. § 416.920(a)(4)(i).  If a claimant is working and that work is deemed to be SGA, that individual is found not disabled.  20 C.F.R. §

---

[1]In *Lucia v. S.E.C.*, 138 S.Ct. 2044 (2018), the Supreme Court recently held that ALJs of the Securities and Exchange Commission are "Officers of the United States" and thus subject to the Appointments Clause.  To the extent Lucia applies to Social Security ALJs, the parties have forfeited the issue by failing to raise it in their briefing.  *See Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1161 n.2 (9th Cir. 2008) (the Court will not consider matters on appeal that were not specifically addressed in an appellant's opening brief).

416.920(b). If a claimant is working as an employee, her earnings show whether she has performed SGA. 20 C.F.R. § 416.974(a)(1). A claimant's average monthly earnings exceeding the SGA benchmark show that the claimant is performing SGA. 20 C.F.R. § 416.974(b). In 2012, an average monthly earnings above $1,010.00 demonstrated SGA. POMS DI 10501.015. Likewise, in 2013, an average monthly earnings above $1,040.00 demonstrated SGA. *Id.*

From August of 2012 to June of 2013, Plaintiff was employed at Yakima Valley Council on Alcoholism, and her earnings averaged $1,120.46 a month in 2012 ($5,602.32 divided by 5 months) and $1,746.78 a month in 2013 ($10,480.68 divided by six months). Tr. 1149.

However, earnings exceeding the SGA bench mark does not necessarily equate to performing SGA. The ALJ and Plaintiff have addressed three ways in which a person's work above the SGA benchmark may not be evidence of SGA: (1) an unsuccessful work attempt; (2) sheltered or special environment; and (3) a trial work period followed by extended period of eligibility. Tr. 799; ECF No. 17 at 5-8.

First, the ALJ considered whether Plaintiff's work could be considered an unsuccessful work attempt in her decision; she found that Plaintiff's work did not qualify as an unsuccessful work attempt. Tr. 799. An unsuccessful work attempt is work lasting up to six months that the claimant had to stop or reduce to below SGA levels because of an impairment. 20 C.F.R. § 416.974(c)(1). Earnings from an unsuccessful work attempt are not considered when determining whether or not work is SGA at step one. 20 C.F.R. § 416.974(a)(1). Here, Plaintiff's employment at SGA levels exceeded six months. Tr. 1149, 1259. Therefore, the work does not qualify as an unsuccessful work attempt, 20 C.F.R. § 416.974(c)(4), and the ALJ did not err in her determination.

Second, Plaintiff argues that she received accommodations at this job that resulted in the work qualifying as a sheltered or special environment. ECF No. 17

at 5-7. The calculation of SGA only considers the earnings an employee claimant actually earns. 20 C.F.R. § 416.974(a)(1). If a claimant is working in a sheltered workshop "you may or may not be earning the amounts you are being paid. The fact that sheltered workshop or similar facility is operating at a loss or is receiving some charitable contributions or governmental aid does not establish that you are earning all you are being paid." 20 C.F.R. § 416.974(a)(3). "Sheltered employment is employment provided for individuals with disabilities in a protected environment under an institutional program." POMS DI 10505.025D. "An employee working in a sheltered workshop or comparable facility for severely impaired persons will ordinarily be considered not engaged in SGA if the employee's 'countable earnings' do not average more than the amount shown in the Earnings Guidelines (DI 10501.015)." *Id*. If a claimant is working under special conditions that take into account her impairments, the work may not demonstrate SGA. 20 C.F.R. § 416.973(c). Examples of special conditions include assistance from other employees in performing the work, allowed to work irregular hours or take frequent rest periods, provided special equipment, assigned work especially suited to the impairment, arranged special circumstances, permitted to work at a lower standard of productivity or efficiency, or given work because of a family relationship or past association with the employer. *Id*.

Plaintiff argues that because she was allowed to take a lot of time off and have another employee cover for her, her work falls under the special conditions addressed in 20 C.F.R. § 416.973(c). ECF No. 17 at 6-7. There is no evidence that the treatment facility received subsidies for employing Plaintiff or that it was an institutional program. Therefore, the work does not qualify as sheltered work. While Plaintiff presents evidence of being allowed to take additional time off, there is no evidence that these potential special conditions demonstrate that Plaintiff did not earn her wages. In Plaintiff's performance review, it was noted that she was missing work, but that she had a legitimate reason and provided proper notice. Tr.

1187. It also noted that she met or exceeded expectations in all of the areas of review. *Id*. There is no evidence that allowances were made to the extent that Plaintiff did not earn her wages.

Third, Plaintiff argues that the work should be considered a trial work period followed by an extended period of eligibility. A trial work period allows a claimant to test her ability to work while still being considered disabled. 20 C.F.R. § 404.1592(a). A claimant can test her ability to perform work for up to nine months. *Id*. Earnings exceeding $720.00 a month in 2012 and $750.00 a month in 2013 count towards the nine months of the allowed trial work period. 20 C.F.R. § 404.1592(b); Monthly Earnings That Trigger a Trial Work Period, https://www.ssa.gov/oact/cola/twp.html (last viewed Oct. 11, 2018). Following a trial work period, a claimant enters the reentitlement period, also known as the extended period of eligibility. 20 C.F.R. § 404.1592a; POMS DI 13010.210. This is a 36 month period in which a claimant may continue to test her ability to work, but if a claimant stops earning SGA, benefits are reinstated without the need to file a new application. 20 C.F.R. § 404.1592a(a). Plaintiff's argument cannot succeed because the trial work period and the extended period of eligibility only apply to applications for Social Security Disability Insurance benefits under Title II and Plaintiff has filed an application for SSI benefits under Title XVI. *See* 20 C.F.R. § 404.1 ("The regulations in this part 404 . . . relate to the provisions of title II of the Social Security Act . . .").

In conclusion, the ALJ did not err in her determination that Plaintiff had engaged in SGA from August 2012 to June 2013 based on the evidence in the record and the arguments made by the parties.[2]

---

[2]The Court acknowledges that there are post eligibility earnings rules in SSI cases that may or may not be applicable to the period in question based an initial finding of eligibility at either the alleged onset date or application date. *See* POMS

**2.      Step Two**

Plaintiff challenges the ALJ's step two determination asserting that the ALJ erred by failing to address her right knee impairment. ECF No. 17 at 8-9.

Step-two of the sequential evaluation process requires the ALJ to determine whether or not the claimant "has a medically severe impairment or combination of impairments." *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996) (citation omitted). "An impairment or combination of impairments can be found 'not severe' only if the evidence establishes a slight abnormality that has 'no more than a minimal effect on an individual[']s ability to work.'" *Id*. at 1290. The step-two analysis is "a *de minimis* screening device to dispose of groundless claims." *Id*.

In her step two determination, the ALJ addressed Plaintiff's left knee finding that her degenerative joint disease of the left knee was a severe impairment. Tr. 799. Additionally, the ALJ discussed Plaintiff's obesity, endometriosis, gastroesophageal reflux disease, lupus, carpal tunnel syndrome, and sleep disorder, but found these were not severe impairments. Tr. 800. Nowhere in the decision did the ALJ discuss Plaintiff's right knee impairment.

As early as 2009, Plaintiff complained of her knees bothering her. Tr. 545. During an evaluation in August of 2014, the provider observed bilateral knee swelling. Tr. 1393. A March 12, 2015 x-ray showed bilateral mild to early moderate narrowing of the medial femorotibial compartments with mild bone sclerosis and small marginal spurs, small marginal spurs along proximal lateral tibias, and mild lateral patellofemoral joint space narrowing with small adjacent spurs. Tr. 1672. The impression following the imaging was bilateral osteoarthritic changes. *Id*. This is objective evidence of an impairment in both knees. Additionally, on April 21, 2015 and October 7, 2015 examinations of the right

---

SI 02301.215. However, none of these arguments were presented to the Court, so they will not be addressed in this determination.

ORDER GRANTING PLAINTIFF'S MOTION - 10

knee demonstrated mild crepitus, mild compression pain, a good range of motion, and decreased strength in the quadriceps and hip abduction. Tr. 1646, 1649. She received a Depo-Medrol injection in the right knee joint. Tr. 1646.

There is some objective evidence that Plaintiff's knee impairment is present bilaterally. Since the case is being remanded to address the opinion evidence, *see infra.*, the ALJ will address both Plaintiff's left knee and right knee impairments at step two.

**3. Medical Opinions**

Plaintiff argues that the ALJ failed to properly consider and weigh the opinions expressed by Jan M. Kouzes, Ed.D., N.K. Marks, Ph.D., Mark Duris, Ph.D., Pamela Miller, Ph.D., Leslie Postovoit, Ph.D., Eugene Kester, Ph.D., Matthew Comrie, Psy.D., and Ben Pate, PA-C. ECF No. 17 at 9-19.

In weighing medical source opinions, the ALJ should distinguish between three different types of physicians: (1) treating physicians, who actually treat the claimant; (2) examining physicians, who examine but do not treat the claimant; and, (3) nonexamining physicians who neither treat nor examine the claimant. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). The ALJ should give more weight to the opinion of a treating physician than to the opinion of an examining physician. *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007). Likewise, the ALJ should give more weight to the opinion of an examining physician than to the opinion of a nonexamining physician. *Id.*

When an examining physician's opinion is not contradicted by another physician, the ALJ may reject the opinion only for "clear and convincing" reasons, and when an examining physician's opinion is contradicted by another physician, the ALJ is only required to provide "specific and legitimate reasons" to reject the opinion. *Lester*, 81 F.3d at 830-31. The specific and legitimate standard can be met by the ALJ setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating her interpretation thereof, and making

findings. *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). The ALJ is required to do more than offer her conclusions, she "must set forth [her] interpretations and explain why they, rather than the doctors', are correct." *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988).

      A.     Jan M. Kouzes, Ed.D.

On June 2, 2011, Dr. Kouzes completed a Psychological/Psychiatric Evaluation form for the Washington Department of Social and Health Services (DSHS). Tr. 457-62. At the time of the evaluation, Plaintiff reported that she had left Canada the week prior and was living in her car. Tr. 459. She diagnosed Plaintiff with major depressive disorder, PTSD, and borderline personality disorder. *Id*. She opined that Plaintiff had a marked limitation in the abilities to be aware of normal hazards and take appropriate precautions, to communicate and perform effectively in a work setting with public contact, and to maintain appropriate behavior in a work setting. Tr. 460. She opined Plaintiff had a moderate limitation in the abilities to learn new tasks, to perform routine tasks without undue supervision, and to communicate and perform effectively in a work setting with limited public contact. Tr. 459-60. Dr. Kouzes estimated that Plaintiff would have this level of impairment for a minimum of twelve months and a maximum of twenty-four months. Tr. 460.

The ALJ gave the opinion "some but limited weight" and provided the following explanation:

> she was dealing with significant stressors at the time of the evaluation per her report including living in her car since relocating from Canada one week prior. She was also not actively engaged in mental health treatment or taking any medications at that time. These factors undercut the reliability of her opinion. As discussed, the claimant's symptoms improved with medication and decreased stressors.

Tr. 807.

The explanation provided by the ALJ fails to meet the specific and

legitimate standard required to reject the opinion of an examining psychologist. The ALJ failed to provide any example or citation to the record demonstrating that Plaintiff improved with medication and decreased stressors. The ALJ's ambiguous reference to "As discussed," could be seen as a reference to the credibility analysis previously in the decision in which she provided citations to the record that she found showed improvement in Plaintiff's mental health impairments. Tr. 805-06. The earliest evidence of improvement the ALJ referenced was Plaintiff's work beginning in August of 2012. Tr. 805. The remainder of the citations to the medical evidence were from February 2014 to December of 2016. Tr. 805-06. Dr. Kouzes opined that Plaintiff's marked and moderate limitations would persist for twelve to twenty-four months. Tr. 460. Plaintiff's work beginning in August of 2012 was fourteen months after Dr. Kouzes' opinion and the medical evidence cited is beyond the maximum projection of twenty-four months. Therefore, the ALJ failed to provide any specific reason why Dr. Kouzes' opinion was not reliable at least for the first twelve months she opined that it would persist. As such, the ALJ's explanation is insufficient to support her treatment of the opinion.

Therefore, the case is remanded for the ALJ to properly address Dr. Kouzes' opinion.

**B.     N.K. Marks, Ph.D.**

On February 25, 2016, Dr. Marks completed a Psychological/Psychiatric Evaluation for DSHS. Tr. 1653-59. He diagnosed Plaintiff with marked limitations in the ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances without special supervision, to adapt to changes in a routine work setting, to communicate and perform effectively in a work setting, to maintain appropriate behavior in a work setting, to complete a normal work day and work week without interruptions from psychologically based symptoms, and to set realistic goals and plan independently. Tr. 1657. He opined she had a moderate limitation in an additional six areas of

functioning. *Id*. He estimated that Plaintiff's limitations would persist with available treatment for twelve months. *Id*.

The ALJ gave his opinion "some but limited weight," specifically rejecting the marked limitations Dr. Marks provided. Tr. 808. She rejected these limitations because Dr. Marks included a disclosure at the beginning of his evaluation and because the marked limitations were inconsistent with the overall medical evidence of record giving the example of Plaintiff's ability to work as a cook and the fact that she "exceeded expectations" in the categories of dependability, customer service, quality, quantity, and problem solving. *Id*.

The ALJ's rationale for rejecting the marked limitation does not meet the specific and legitimate standard. First, the disclaimer at the beginning of the evaluation is not affirmative evidence that Plaintiff misrepresented her symptoms. The disclaimer reads as follows:

> Please note: this evaluation was conducted to determine qualification for Washington State HEN, TANF, or ABD programs. While every effort is made to insure accuracy, it is based on client self-report and clinical presentation at the time of the interview. Other records may or may not have been available for review. As a result, there is always the chance that factors such as criminal history or substance abuse may have been underreported. The reader is advised that client presentation may differ from situation to situation and the most accurate diagnostics are based on several observations over time and in multiple settings. As such, other sources of information in addition to this report should be considered, when available, to give the most accurate clinical picture of and prognosis for the individual.

Tr. 1653-54. Without looking beyond the existence of the disclaimer and citing evidence that the opinion was unreliable, this reason fails to meet the specific and legitimate standard. *See Magallanes*, 881 F.2d at 751 (The specific and legitimate standard can be met by the ALJ setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating her interpretation thereof, and

making findings.); *see Lester*, 81 F.3d at 630 ("the purpose for which medical reports are obtained does not provide a legitimate basis for rejecting them.")

The ALJ's second reason, that the opinion was inconsistent with the medical evidence of record, is also not specific and legitimate. While an opinion's inconsistency with the medical evidence is a specific and legitimate reason for rejecting the opinion, *Batson*, 359 F.3d at 1195, the ALJ failed to specifically set forth any medical evidence that was inconsistent with Dr. Marks' opinion. Instead, the ALJ cited to Plaintiff's work history, Tr. 808, which is not medical evidence. Furthermore, the evidence from Plaintiff's work performance is not inconsistent with Dr. Marks' opinion. The ALJ cited to a nine month performance review from her job in which she received a scoring of "Meets Expectations" or "Exceeds Expectations" in all competencies addressed. Tr. 808 (citing Tr. 1187). What the ALJ does not address is the termination letter sent just three months later which details multiple occasions when Plaintiff's work performance demonstrated the very limitations Dr. Marks opined. In March and June of 2013, Plaintiff yelled at co-workers. Tr. 1185. The letter states "Your behavior has been so unpredictable and erratic to staff that they feel they need to have a phone nearby to call for help if needed." Tr. 1186. Plaintiff had received repeated coaching for issues such as professional behavior, work choices, and tone. *Id*. She received a written warning about her yelling and failure to maintain a safe working environment. *Id*. She was given a training plan and a packet of trainings and failed to complete them. *Id*. Therefore, upon remand the ALJ will readdress Dr. Marks' opinion.

**C.  Remaining Opinions**

Plaintiff has also challenged the opinions of Dr. Duris, Dr. Miller, Dr. Postovoit, Dr. Kester, Dr. Comrie, PA Pate. However, considering the case is being remanded for the ALJ to address the opinions of Dr. Kouzes and Dr. Marks, the ALJ will readdress all the medical opinions in the record upon remand.

The Court also notes that the ALJ failed to discuss the opinion of reviewing

psychologist Brian VanFossen, Ph.D. Tr. 1644-45. The ALJ shall also address this opinion on remand.

### 4. Lay Witness Testimony

The record contains evidence submitted by Plaintiff's boyfriend, Norman Landry, partner David Goodger, and sister Betty Borchers. Tr. 255-63, 313-20, 1286-94, 1359

Lay witness testimony is "competent evidence" as to "how an impairment affects [a claimant's] ability to work." *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050 (9th Cir. 2006); *see also Dodrill v. Shalala*, 12 F.3d 915, 918-19 (9th Cir. 1993) ("[F]riends and family members in a position to observe a claimant's symptoms and daily activities are competent to testify as to her condition."). An ALJ must give "germane" reasons to discount evidence from such "other sources." *Dodrill*, 12 F.3d at 919.

The ALJ rejected statements from these lay witnesses because their observations were similar to Plaintiff's subjective complaints; therefore, she assigned them little weight for the same reasons she rejected Plaintiff's subjective complaints. Tr. 810. The Ninth Circuit has found that lay witness testimony which mirrors the claimant's unreliable testimony can be rejected: "Where lay witness testimony does not describe any limitations not already described by the claimant, and the ALJ's well-supported reasons for rejecting the claimant's testimony apply equally well to the lay witness testimony." *Molina v. Astrue*, 674 F.3d 1104, 1117 (9th Cir. 2012). However, the ALJ is instructed to readdress Plaintiff's symptom statements upon remand. *See infra*. Therefore, the ALJ will also readdress the lay witness testimony in the record.

### 5. Plaintiff's Symptom Statements

Plaintiff contests the ALJ's determination that her symptom statements were not consistent with the medical evidence and other evidence in the record. ECF No. 17 at 20-23.

It is generally the province of the ALJ to make credibility determinations, *Andrews*, 53 F.3d at 1039, but the ALJ's findings must be supported by specific cogent reasons, *Rashad v. Sullivan*, 903 F.2d 1229, 1231 (9th Cir. 1990). Absent affirmative evidence of malingering, the ALJ's reasons for rejecting the claimant's testimony must be "specific, clear and convincing." *Smolen*, 80 F.3d at 1281; *Lester*, 81 F.3d at 834. "General findings are insufficient: rather the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Lester*, 81 F.3d at 834.

The evaluation of a claimant's symptom statements and their resulting limitations relies, in part, on the assessment of the medical evidence. *See* 20 C.F.R. § 416.929(c); S.S.R. 16-3p. Therefore, in light of the case being remanded for the ALJ to address the medical source opinions in the record, a new assessment of Plaintiff's subjective symptom statements is also required.

## REMEDY

The decision whether to remand for further proceedings or reverse and award benefits is within the discretion of the district court. *McAllister v. Sullivan*, 888 F.2d 599, 603 (9th Cir. 1989). An immediate award of benefits is appropriate where "no useful purpose would be served by further administrative proceedings, or where the record has been thoroughly developed," *Varney v. Secretary of Health & Human Servs.*, 859 F.2d 1396, 1399 (9th Cir. 1988), or when the delay caused by remand would be "unduly burdensome*,*" *Terry v. Sullivan*, 903 F.2d 1273, 1280 (9th Cir. 1990); *see also Garrison v. Colvin*, 759 F.3d 995, 1021 (9th Cir. 2014) (noting that a district court may abuse its discretion not to remand for benefits when all of these conditions are met). This policy is based on the "need to expedite disability claims." *Varney*, 859 F.2d at 1401. But where there are outstanding issues that must be resolved before a determination can be made, and it is not clear from the record that the ALJ would be required to find a claimant disabled if all the evidence were properly evaluated, remand is appropriate. *See*

*Benecke v. Barnhart*, 379 F.3d 587, 595-96 (9th Cir. 2004); *Harman v. Apfel*, 211 F.3d 1172, 1179-80 (9th Cir. 2000).

In this case even if the opinions of Dr. Kouzes and Dr. Marks were credited as true, the ten month period of work must be addressed and resolved. Therefore, it is not clear from the record that the ALJ would be required to find Plaintiff disabled for the entire period alleged if all the evidence were properly evaluated. Further proceedings are necessary for the ALJ to address all of Plaintiff's impairments at step two, to readdress the medical opinion evidence, to readdress the lay witness evidence, and to readdress Plaintiff's symptom statements. The case shall be reassigned to a new ALJ. That ALJ will call a psychological and vocational expert to testify at remand proceedings.

## CONCLUSION

Accordingly, **IT IS ORDERED:**

1. Defendant's Motion for Summary Judgment, **ECF No. 21**, is **DENIED**.

2. Plaintiff's Motion for Summary Judgment, **ECF No. 17**, is **GRANTED, in part**, and the matter is **REMANDED** to the Commissioner for additional proceedings consistent with this Order.

3. Application for attorney fees may be filed by separate motion.

The District Court Executive is directed to file this Order and provide a copy to counsel for Plaintiff and Defendant. **Judgment shall be entered for Plaintiff** and the file shall be **CLOSED**.

**IT IS SO ORDERED.**

DATED February 11, 2019.



_____
JOHN T. RODGERS
UNITED STATES MAGISTRATE JUDGE